# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DOUGLAS MATE; CHRISTOPHER BAKER; and FIREARMS POLICY COALITION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GARY WESTCOTT, in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections; and LIZ MURRILL, in her official capacity as Louisiana Attorney General, <br><br> Defendants. | Civil Action No.: |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, OR OTHER RELIEF

COME NOW Plaintiffs Douglas Mate; Christopher Baker; and Firearms Policy Coalition, Inc. ("Plaintiffs"), by and through undersigned counsel, and allege as follows:

### INTRODUCTION

1. In *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1, 31 (2022), the Supreme Court confirmed that law-abiding citizens of this Nation have a "general right to publicly carry arms for self-defense."

2. Earlier this year, Louisiana enacted Senate Bill No. 1 of the 2024 Second Extraordinary Session ("SB 1"), which generally allows "law-abiding persons eighteen years of age and not otherwise prohibited" in Louisiana to carry a handgun "lawfully without a permit" issued by state authorities. SB 1, however, did not address a critical issue in the State's regulatory

1

scheme regarding carry: While it maintained the State's permitting system as optional for Louisiana residents, it failed to provide an avenue for non-residents, including Plaintiffs Mate and Baker, to apply for and obtain the state-issued license that is essential for them to exercise their constitutionally protected right to bear arms in public. For example, only a licensee is exempt from the State's general prohibition on carrying a firearm within 1,000 feet of a school under the State's "Firearm-Free Zone" laws (La. R.S. 14:95.6), and likewise for the Federal Gun-Free School Zone Act (18 U.S.C. § 922(q)(2)). The same goes for the benefits of Senate Bill 2 of the 2024 Second Extraordinary Session, which enacted La. R.S. 9:2793.12 (also effective July 4, 2024), providing immunity from civil liability under certain circumstances for persons with a Louisiana carry license.

3. This Court should enter a judgment that declares Louisiana's non-resident carry restriction unconstitutional and enjoins Defendants (and all those under Defendants' supervision) from enforcing the residency requirement for carry applications with respect to otherwise qualified individuals who are not Louisiana residents.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1343, because this Complaint seeks relief afforded by 42 U.S.C. § 1983, for past, continuing, and/or imminent violations of Plaintiffs' rights arising under the United States Constitution.

5. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this case occurred in the District.

## THE PARTIES

9. Plaintiff Douglas Mate is a resident of New Braunfels, Texas. Plaintiff Mate desires to apply for and acquire a carry license issued by the State of Louisiana and would do so but for Defendants' enforcement of the laws at issue in this case. Except for his non-resident status,

2

Plaintiff Mate is eligible to apply for and acquire a Louisiana carry license. Plaintiff Mate possesses a license to carry a firearm issued by the State of Texas. Apart from the residency requirement, Plaintiff Mate satisfies all criteria for a Louisiana carry license. Plaintiff Mate travels to, through, and from Louisiana, including for work in Calcasieu Parish, and desires and intends to obtain a carry license so that he can exercise his right to carry a handgun for self-defense and lawful purposes while visiting Louisiana. Plaintiff Mate is a member of Plaintiff Firearms Policy Coalition, Inc. ("FPC").

10. Plaintiff Christopher Baker is a resident of Conway, Arkansas. Plaintiff Baker desires to apply for and acquire a carry license issued by the State of Louisiana and would do so but for Defendants' enforcement of the laws at issue in this case. Except for his non-resident status, Plaintiff Baker is eligible to apply for and acquire a Louisiana carry license. Apart from the residency requirement, Plaintiff Mate satisfies all criteria for a Louisiana carry license. Plaintiff Baker travels to, through, and from Louisiana, and desires and intends to obtain a carry license so that he can exercise his right to carry a handgun for self-defense and lawful purposes while visiting Louisiana. Baker regularly carries a concealed firearm in public for self-defense in Arkansas pursuant to that State's "constitutional carry" law. Plaintiff Baker is a member of Plaintiff FPC.

11. Plaintiff Firearms Policy Coalition, Inc. is a nonprofit membership organization incorporated in Delaware with a primary place of business in Clark County, Nevada. FPC works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms and protect the means by which individuals may exercise the right to carry and use firearms. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's

members reside both within and outside the State of Louisiana. FPC brings this action on behalf of its members who are not Louisiana residents but who are legally eligible to possess and acquire firearms and who desire to would apply for a Louisiana carry license but for Defendants' enforcement of the laws at issue in this case.

12. Defendant Gary Westcott is the Secretary of the Louisiana Department of Public Safety & Corrections. The DPSC is responsible for issuing carry licenses pursuant to La. R.S. § 40:1379.3(A)(1). Defendant Westcott is sued in his official capacity

13. Defendant Liz Murrill is the Attorney General of Louisiana. As Attorney General, she is the State's chief law enforcement officer and is responsible for executing and enforcing Louisiana's laws and regulations governing the carrying of firearms in public, as well as enforcing Louisiana's firearm laws and regulations—including the state's issuance of carry licenses. Defendant Murrill is sued in her official capacity.

## GENERAL ALLEGATIONS

14. Earlier this year, Louisiana enacted SB 1 of the Second Extraordinary Session, which generally authorizes individuals 18 years of age or older to carry a handgun in public without a permit throughout the State. SB 1 took effect July 4, 2024.

15. Despite SB 1's embrace of a general right to carry, Louisiana residents must still apply for and receive a carry license issued by the State of Louisiana to exercise the full scope of carry rights, privileges, and immunities available in the State. *See* La. R.S. § 40:1379.3. Louisiana requires, however, that "[t]o qualify for a [carry license]," an applicant must "[b]e a resident of the state." La. R.S. § 40:1379.3(C)(3). Nonresidents, however, are not eligible to apply for nor receive a Louisiana carry license.

16. Closing off nonresidents' ability to obtain a carry license substantially infringes their constitutionally protected right to carry a firearm in public for self-defense. Specifically,

4

Louisiana law (enacted as part of the State's "firearm-free zone" regulations) prohibits the possession of firearms within a "school zone"—the area within a 1,000-foot radius of a school. La. R.S. §§ 14:95.2 (generally prohibiting the carry of firearms in a firearm-free zone), 14:95.6 (defining "firearm-free zone"). Critical here, the "firearm-free zone" prohibitions "shall not apply" to "[a]ny person who has a valid concealed handgun permit … and who carries a concealed handgun within one thousand feet of any school campus." La. R.S. § 14:95.2(C)(9). The net result is that the State's exemption only applies to individuals that have a carry license issued by the State.

17. These 1,000-foot gun-free zones emanate from each and every school in the state,[1] making it impossible for those without carry permits to lawfully carry a firearm in the State to, through, and from any number of destinations. This prohibition includes merely passing through one of these zones. Based on publicly available data, there are more than 1300 elementary and secondary schools in the State. *See* https://www.louisianabelieves.com/resources/library/student-attributes. This number does not include the additional vocational-technical schools, colleges, and universities that are also subject to the State's carry ban. Importantly, these 1000-foot gun-free zones are not marked or identified in any particular way, and encompass vast swaths of public and private property, including major and minor roads and thoroughfares throughout the state.[2]

18. Moreover, many areas have so many schools in close proximity to one another (creating overlapping gun-free zones) that nonresidents effectively have no opportunity to carry handguns for their self-defense. The State requires localities to publish maps of "firearm-free zones" to provide guidance to the public. La. R.S. § 14:95.6(D). To take two examples, the maps

---

[1] "School" is defined in pertinent part as "any public or private elementary, secondary, high school, or vocational-technical school, college, or university in this state." La. R.S. § 14:95.6(C)(1).

[2] Plaintiffs are not challenging the State's ban on firearm carry on School Campuses. *See* La. R.S. § 14:95.6(C)(2) (" 'School campus' means all facilities and property within the boundary of the school property.").

for New Orleans and Lafayette show how the State's "firearm-free zones" cover so much area that it is nearly impossible for an individual to comply with the law while carrying and traveling absent a Louisiana carry permit. *See* Ex A, Firearm-Free Zone Map of New Orleans; Ex B, Firearm-Free Zone Map of Lafayette.

19. Although the firearm-free zone law exempts the possession of a firearm "entirely on private property, or entirely within a private residence," as well as firearm possession "entirely within a motor vehicle," La. R.S. § 14:95.2(B)(4), (5), the extensive coverage of its 1,000-foot school radius prohibitions impose a significant burden on Plaintiffs' ability to exercise their Second Amendment protected right to publicly carry a firearm.

20. Furthermore, nonresidents like Plaintiffs are also deprived of other legal benefits that are granted to carry license holders. Under Louisiana law, carry license holders are immune from damages "caused by a justified use of force or self-defense through the discharge of the handgun." La. R.S. 9:2793.12(B). Nonresidents carrying a handgun pursuant to the general right to constitutional carry do not get the benefit of such immunity.

21. Plaintiffs are law-abiding, responsible adult citizens who wish to exercise their constitutionally protected right to bear arms in public for self-defense and lawful purposes by obtaining a carry license as required by the State's legislative choices and federal law. The State's regulatory scheme, however, deprives Plaintiffs of any path to do so.

### CLAIMS FOR RELIEF
### FIRST CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
### (SECOND AND FOURTEENTH AMENDMENTS)

22. Plaintiffs incorporate here by reference paragraphs 1 through 21, *supra*, as if fully set forth herein.

23. Louisiana's regulatory scheme prohibiting non-residents from obtaining a carry license violates the Second and Fourteenth Amendments. The Second Amendment is applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010) (incorporating through Substantive Due Process); *id.* at 805 (Thomas, J., concurring) (incorporating through the Privileges or Immunities Clause).

24. To determine whether a state's firearm restriction is constitutional, the Supreme Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. at 24.

25. *Bruen* has already established that the Second Amendment covers Plaintiffs' proposed conduct here—carrying arms publicly for self-defense and other lawful purposes. *Id.* at 31–32. As such, the Second Amendment "presumptively protects" Plaintiffs' right to carry firearms in public in Louisiana. *Id.* at 24.

26. It is thus the State's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19; *see also id.* at 60 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

27. Louisiana cannot meet this burden. There is no well-established and representative historical tradition of restricting the ability to bear arms based on residency. Accordingly, the residency requirement for obtaining a carry license in La. R.S. § 40:1379.3(C)(3) violates the Second and Fourteenth Amendments.

## SECOND CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1983
## (PRIVILEGES AND IMMUNITIES)

28. Plaintiffs incorporate here by reference paragraphs 1 through 21, *supra*, as if fully set forth herein.

29. The Privileges and Immunities Clause of Article IV, Section 2 of the U.S. Constitution provides: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

30. The Founders and Framers understood the importance of ensuring that citizens could freely exercise their fundamental, constitutionally protected rights in each and every state in the Union. THE FEDERALIST NO. 42 (James Madison) ("Those who come under the denomination of free inhabitants of a State, although not citizens of such State, are entitled, in every other State, to all the privileges of free citizens of the latter; that is, to greater privileges than they may be entitled to in their own State . . . ."); THE FEDERALIST NO. 80 (Alexander Hamilton) (hailing the Privileges and Immunities Clause as "the basis of the Union").

31. This "provision was designed 'to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.'" *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 64 (1988) (quoting *Paul v. Virginia*, 8 Wall. 168, 180 (1869)). The Clause "establishes a norm of comity without specifying the particular subjects as to which citizens of one State coming within the jurisdiction of another are guaranteed equality of treatment." *Austin v. New Hampshire*, 420 U.S. 656, 660 (1975). According to the Supreme Court, "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State" is "expressly protected by the text of the Constitution," via the Privileges and Immunities Clause. *Saenz v. Roe*, 526 U.S. 489, 500, 501 (1999) (citing U.S. CONST., Art. IV, § 2, cl. 1). Moreover, the Clause "was designed to

8

insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell*, 334 U.S. 385, 395 (1948) (citing *Paul*, 8 Wall. at 180, 181; and *Travis v. Yale & Towne Mfgr. Co.*, 252 U.S. 60, 78 (1920)). And it expressly bars "discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Toomer*, 334 U.S. at 396.

32. The Second Amendment is applicable against the various states *because* it protects a fundamental right of citizens. *McDonald*, 561 U.S. at 791. Moreover, the Supreme Court recognized in *Bruen* that "[t]he Second Amendment's plain text thus presumptively guarantees . . . a right to 'bear' arms in public for self-defense." 597 U.S. at 33.

33. As set forth above, the Individual Plaintiffs and FPC's similarly situated members are law-abiding, responsible citizens who wish to carry firearms in public for self-defense in Louisiana on par with those who reside in the State, including by obtaining a carry license issued by the State of Louisiana. State law, however, makes them ineligible to obtain such a permit solely because they do not live in Louisiana. Louisiana's licensing scheme violates the Privileges and Immunities Clause because it favors Louisiana residents and discriminates against non-residents in the exercise of a fundamental right.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request:

1. That this Court issue a declaratory judgment that the residency requirement for obtaining a carry license in La. Rev. Stat. § 40:1379.3(C)(3) is unconstitutional under the Second and Fourteenth Amendments to the United States Constitution;

2. That this Court issue a declaratory judgment that the residency requirement for obtaining a carry license in La. Rev. Stat. § 40:1379.3(C)(3) is unconstitutional under the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution;

3. That this Court issue a declaratory judgment that Louisiana's ban on carry in firearm-free zones (*see* La. R.S. § 14:92.2(B)(9)), or penalties for violations thereof, is unconstitutional as-applied to Plaintiffs and Plaintiff Firearms Policy Coalition's similarly situated members;

4. That this Court issue a permanent injunction enjoining Defendants, Defendants' officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with or supervised by Defendants from enforcing the State's carry license residency requirement, or, in the alternative, from enforcing Louisiana's ban on carry in firearm-free zones (*see* La. R.S. § 14:92.2(B)(9)), or penalties for violations thereof, against Plaintiffs and Plaintiff Firearms Policy Coalition's similarly situated members;

5. That this Court award costs of suit, including attorneys' fees under 42 U.S.C. § 1988 and any other applicable law, and all further relief to which Plaintiffs may be justly entitled.

Dated: December 20, 2024

Respectfully Submitted,

/s/ SMD
Bradley A. Benbrook*
Stephen M. Duvernay*
BENBROOK LAW GROUP, P.C.
701 University Avenue, Suite 106
Sacramento, California 95`825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

/s/ GJA
George J. Armbruster III - #23432
ARMBRUSTER & ASSOCIATES, APLC
332 E. Farrel Rd,, Ste. D
Lafayette, LA 70508
Telephone: (337) 889-5511
george@arm-assoc.com

*Attorneys for Plaintiffs*

*Application for admission pro hac vice forthcoming*